# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:12-cv-37-RJC

| | |
|---|---|
| BERTRAM N. MCELHINEY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| ALVIN W. KELLER, JR., et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1), filed pursuant to 42 U.S.C. § 1983. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court has granted Plaintiff's application to proceed in forma pauperis. See (Doc. No. 6).

## I.   BACKGROUND

Pro se Plaintiff Bertram McElhiney is a North Carolina state court prisoner currently incarcerated at Avery/Mitchell Correctional Institution ("AMCI"). On October 4, 1999, in Union County Superior Court, Plaintiff pled guilty to statutory rape/sex offense and sexual exploitation of a minor in the first degree. Plaintiff was sentenced to 16 to 20 years of imprisonment for the statutory rape offense, and he was sentenced to a consecutive sentence of 51 to 71 months of imprisonment for the sexual exploitation of a minor offense. Plaintiff filed this action on February 24, 2012, pursuant to 42 U.S.C. § 1983. Plaintiff has named as Defendants Alvin W. Keller, Jr., identified as Secretary of the North Carolina Department of Correction; Robert C. Lewis, identified as Director of Prisons at the North Carolina Department of Correction; Robert Cooper, identified as Superintendent of AMCI; FNU Tate, identified as a

1

Lieutenant at AMCI; FNU Allen, identified as a Lieutenant at AMCI; and FNU Yelton, identified as a Correctional Officer at AMCI.

In the Complaint, Plaintiff alleges that Defendants violated his First Amendment right to access to the courts by failing to allow him to keep his legal papers at AMCI when he was transferred there. Specifically, Plaintiff alleges that he was transferred from Caledonia Correctional Institution ("CCI") to AMCI on or around February 19, 2009. (Doc. No. 1 at 9). Plaintiff alleges that when he was leaving CCI prison officials told him that he could take only three shipping bags with him and that he would have to mail his legal materials out. (Id. at 9-10). Plaintiff mailed out his legal papers to a third party. Plaintiff alleges that when he arrived at AMCI, Defendant Tate told Plaintiff that he had to mail out or throw away the rest of the legal materials that Plaintiff had. When Plaintiff tried to tell Tate that he needed his legal materials, Tate told Plaintiff that if he did not shut up and decide what to do he would have to go to the segregation unit. (Id. at 10). Plaintiff mailed away the rest of the legal materials.

Plaintiff alleges that on February 25, 2009, Plaintiff was called to the sergeant's office to receive some property that had been mailed to him. Plaintiff went to the receiving area, where he found the legal papers that he was forced to leave at CCI. Defendant Yelton told Plaintiff she was there to catalogue the property and that it had to be thrown out or mailed away. Yelton then called Defendant Allen into the office. Defendant Allen told Plaintiff that the superintendent of AMCI had a standing order that inmates are not allowed to store their legal materials in the prison because AMCI has no place to store them and the inmate lockers are too small to store them on the unit. (Id. at 11). Plaintiff states that, under threat of going to the segregation unit, he was then forced to mail out his legal materials. Plaintiff alleges that the standing order violates DOC's written policy that Plaintiffs may keep a certain amount of legal materials with

2

them. Plaintiff also alleges that AMCI officials would not allow another prisoner to keep his legal materials until he showed them that he had a pending MAR. (Id. at 13).

Plaintiff alleges that he filed a grievance on February 19, 2010, regarding the denial of his right to keep his legal property with him. (Id. at 12). On March 4, 2010, Plaintiff received the response to his grievance, citing lack of space in the prison as the reason why Plaintiff could not keep his legal property with him. Plaintiff appealed the grievance response, but the decision was upheld at both Steps Two and Three of the grievance process. See (Id. at 24-26).

Plaintiff contends that Defendants violated his First Amendment right to redress his grievances to the government by forcing him to mail out his legal and research materials. Plaintiff alleges that he has no way to research his conviction or have access to the courts. Plaintiff further alleges that because a prisoner is allowed to file an MAR at any time to challenge his conviction, he is being denied the right to file an MAR because of Defendants' refusal to allow him to keep his legal papers. (Id. at 15). Plaintiff alleges that in February 2004 North Carolina Prisoner Legal Services ("NCPLS") denied him all legal help. Plaintiff alleges that the refusal of NCPLS to assist him, in conjunction with the fact that AMCI has no law library, constitutes a denial of Plaintiff's access to the courts. Although he does not allege any personal involvement in denial of his legal materials by Defendants Lewis, Keller, and Cooper, Plaintiff alleges that Defendants Lewis and Keller should be held liable because, as Director of Prisons, Defendant Lewis is in charge of the grievance procedures and because, as Director of the DOC, Defendant Keller approves all policy changes in the North Carolina prisons. (Id. at 14). Although Plaintiff does not state why he believes Defendant Cooper should be held liable, it is most likely due to Defendant Cooper's position as Superintendent of AMCI.

As relief, Plaintiff seeks a preliminary and permanent injunction ordering Defendants

Keller and Lewis to "stop the denial of legal materials to inmates and the threats of [segregation] that their staff menace inmates with when at a prison and especially when shipped to another prison"; an order from the Court providing at all prisons "fully adequate storage areas for inmates to store their legal property and have quick access to them without hassles from staff"; and to "change DOC written policy . . . so that staff cannot deny inmates their legal documents and all legal materials that are needed to challenge a conviction." (Id. at 17). Plaintiff also seeks from Defendants nominal damages in the amount of $10.00 and punitive damages in the amount of $64.40. (Id. at 18).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, § 1915A requires an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," and the court must identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable

under federal law.  Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.    DISCUSSION**

In Bounds v. Smith, the Supreme Court held that the right of access to courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. 817, 828 (1977).   The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement.  See Lewis v. Casey, 518 U.S. 343, 356-57 (1996).  Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim.  See id.  A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim."  Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Plaintiff fails to state a claim for a violation of his First Amendment right to access to the courts because he has not alleged any actual injury.  While he states that he is being denied the right to file a state, post-conviction MAR, Plaintiff does not allege that he missed any deadline set by the Court or that he was prejudiced in any way by the inability to access his legal materials.  As noted, Plaintiff was convicted in 1999 of statutory rape/sex offense and sexual exploitation of a minor in the first degree.  See McElhiney v. Harkleroad, 3:02cv325, Doc. No. 10 (W.D.N.C. Oct. 17, 2002).  Plaintiff did not appeal his conviction.  On November 16, 2001, Plaintiff filed an MAR in Union County Superior Court, and the MAR was denied on December 28, 2001.  (Id. at 2).  On August 7, 2002, Plaintiff filed a federal habeas petition in this Court

pursuant to 28 U.S.C. § 2254. In his petition, Petition contended that his convictions were obtained in violation of his constitutional rights and that his attorney rendered ineffective assistance of counsel. (Id. at 3). This Court denied the petition as time-barred on October 17, 2002. (Id. at 7). On May 1, 2003, the Fourth Circuit Court of Appeals dismissed Petitioner's appeal. See McElhiney v. Harkleroad, 62 Fed. App'x 537 (4th Cir. 2003).

Plaintiff complains here that because he does not have his legal papers with him he has not been able to file a state post-conviction MAR, but his conviction was entered fourteen years ago, and Plaintiff has already filed one MAR and a federal habeas petition, both of which were denied. Plaintiff has simply not shown that he has suffered any actual injury in Defendants' alleged refusal to allow him to keep his legal materials at the prison. That is, he does not allege facts showing that "a nonfrivolous legal claim has been frustrated or was being impeded." Lewis v. Casey, 518 U.S. at 353.

Moreover, by Plaintiff's own allegations, officials at AMCI did not deny Plaintiff his right to his legal papers. Rather, they merely required him to mail out his legal materials. Plaintiff specifically alleges that he "does not know if he can get his legal property back or where it is as the relationship between the plaintiff and the person who has possession of plaintiff's legal property has changed and the possibility of acquiring his legal property back is almost nil." (Doc. No. 1 at 13). Plaintiff does not allege that Defendants have caused his inability to access the legal materials that he mailed away. Rather, by Plaintiff's own allegations, a third party is refusing to mail him his legal papers.

Finally, to the extent that Plaintiff contends that his access to the courts was denied because AMCI does not have a law library and NCPLS refused to assist him with his case, he has not alleged a denial of his right to access to the courts. Under Bounds, states must provide

meaningful access to the courts by either providing prison law libraries or by providing assistance to prisoners by persons trained in the law. Bounds, 430 U.S. at 828. North Carolina prisoners have access to NCPLS in lieu of law libraries. See Wrenn v. Freeman, 894 F. Supp. 244, 248-49 (E.D.N.C. 1995), aff'd, 92 F.3d 1185 (4th Cir. 1996) (unpublished). The fact that NCPLS does not take on every prisoner's case does not mean that Plaintiff's rights under Bounds were violated. See id. In any event, as the Court has already noted, Plaintiff has simply failed to allege that he suffered any actual injury in this case. Indeed, Plaintiff was represented by counsel in his underlying criminal conviction, and he was able to file both a state post-conviction motion and a federal habeas petition. In sum, Plaintiff has failed to state a claim for a violation of his First Amendment right to access to the courts.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's Complaint is **DISMISSED** for failure to state a claim.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED** for failure to state a claim.
2. The Clerk is directed to terminate this action.

Signed: December 3, 2013

Robert J. Conrad, Jr.
United States District Judge